UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LEONARDO CAVERO
LIDIA CAVERO                                  Case No.

     Plaintiffs

-v-

ONE WEST BANK FSB
INDYMAC MORTGAGE SERVICES
CHOICE LEGAL
FAITH DOMINIQUE ESQ, Individually
ERICK DUENAS ESQ, Individually
JANE DOE ESQ, Individually
GEORGE KAMUCK, Individually
FOREST MCNIGHT, Individually
SUCHAM MURRAY, Individually

     Defendants

_____/

FILED by _____ D.C.

NOV 2 6 2013

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA — MIAMI

## COMPLAINT

     Plaintiffs, LEONARDO CAVERO and LIDIA CAVERO through legal counsel, hereby sue Defendants, ONE WEST BANK FSB; INDYMAC MORTGAGE SERVICES LLC, CHOICE LEGAL; FAITH DOMINIQUE, ESQ; ERICK DUENAS, ESQ; JANE DOE, ESQ, GEORGE KAMUCK, FOREST MCNIGHT and SUCHAM MURRAY

### PRELIMINARY STATEMENT

1.     This is an action for damages brought for violations of the Real Estate Settlement Practices Act (RESPA) 12 U.S.C. §2605 et seq.; for damages for violations of the Truth in Lending Act (TILA) 15 U.S.C. §1641 et seq.; for damages for violations of the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §1692 et seq.; for damages for violations of the Florida Consumer Collection Practices Act (FCCPA) FLA STAT §559

1

(Part VI); for damages for violations of the Florida Deceptive and Unfair Practices Act (FDUTPA) FLA STAT §501.20491 and for declaratory and injunctive relief.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is conferred by 12 U.S.C. §2614; 15 U.S.C. §1692; and28 U.S.C.§1331.

3.      Venue is proper in this District pursuant to 28 U.S.C. §1391b.

4.      This is an action for damages which exceed $100,000.00.

5.      Plaintiffs, LEONARDO CAVERO and LIDIA CAVERO, are residents of the State of Florida.

6.      Defendant, ONE WEST BANK FSB. ("ONEWEST."), is a federally chartered corporation, authorized to do business in Florida.

7.      INDYMAC MORTGAGE SERVICES LLC ("INDYMAC") is an unknown entity, authorized to do business in Florida.

8.      CHOICE LEGAL (CLEGAL) is a Florida law firm.

9.      FAITH DOMINIQUE, ESQ (DOMINIQUE) is an Attorney for CLEGAL.

10.      ERICK DUENAS, ESQ (DUENAS) is an Attorney for CLEGAL.

11.      JANE DOE, ESQ, (JDOE) is an Attorney for CLEGAL.

12.      GEORGE KAMUCK (KAMUCK) is an employee for ONEWEST.

13.      FOREST MCNIGHT (MCNIGHT) is an assistance Secretary for ONEWEST.

14.      SUCHAM MURRAY (MURRAY) is an employee for ONEWEST.

15.      All conditions precedent to the bringing of this action have been performed, waived or excused.

16.      Plaintiff contends that Defendants have conspired and committed suspicious activities in order to wrongfully foreclose with total disregard for Federal and State laws.

17.      Plaintiff contends that Defendants have created and caused suspicious documents to be filed into the public records of MIAMI DADE County and into the State Court giving the appearance that there is a legal foreclosure going while some or all of the Defendants continue to break the law.

2

18.     Plaintiff contends that this is common practice by some or all Defendants nationwide and that some or all Defendants were under investigation by the U.S. Department of Justice and the Attorneys General of both the United States and Florida.

19.     Plaintiff contends that CLEGAL was created after the closing of MARSHALL C WATSON PA due to WATSON'S violations of Federal Law in their Foreclosure practices.

20.     Plaintiff intends to prove trough the Discovery process that CLEGAL continue to violate the law the same way as when they were known as MARSHALL C WATSON PA.

## FACTUAL ALLEGATIONS

21.     Plaintiffs are natural persons allegedly obligated, to pay a debt asserted to be owed or due a creditor.

22.     Plaintiffs' alleged obligation, owed or due, or asserted to be owed or due a creditor, arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes (Exhibit A note).

23.     Plaintiff affirms that all copies are true and correct.

24.     On or about October 13, 2009 ONEWEST through their attorneys, Marshall C Watson PA filed a complaint for foreclosure (case # 09-75207-ca-01) in Miami-Dade County against the Plaintiff. The complaint was signed by Andrew Scolaro, bar # 044927.An alleged copy of the Mortgage and the Note was attached to the complaint (Exhibit B Mortgage).

25.     On or about October 19, 2009 Plaintiff was served a summons and complaint from ONEWEST attempting to foreclosure on the Plaintiffs property (Exhibit C complaint and summons).

26.     The summons, giving the Plaintiff only 20 days to respond to the complaint, overshadows federal law allowing the Plaintiff to dispute the debt and would unfair, deceptive, misleading and confusing to the least educated consumer.

3

27.     On **September 14, 2009**, an assignment of Mortgage was purportedly executed and returned to Marshal C. Watson allegedly transferring said Mortgage from MERS Inc. as Nominee for IndyMac Bank FSB to ONEWEST. The assignment carries a MIN #100055401278379658.

28.     On October 22, 2009 said alleged assignment was recorded in the Miami-Dade County Records as CFN 2009RO767938, **three days after** the filing of said complaint.

29.     In March 2011, Marshal C Watson paid two million dollars to settle a <u>Florida Attorney General investigation</u> into questionable foreclosure practices and suspicious document execution policies.

30.     On April 13, 2011, The Office of Thrift Supervision (OTS) impose a CONSENT ORDER on ONEWEST, "pursuant to 12USC 1818((b), for unsafe or unsound banking practices relating to mortgage servicing and the initiation and handling of foreclosure proceedings". Practices like execution of suspicious affidavits and their notarization were some of ONEWEST violations.

31.     On June 7, 2011 the Court issue an Order of Dismissal on case #09-75204 for lack of prosecution.

32.     On or about August 2, 2012 ONEWEST through their attorneys, Marshall C Watson PA filed for a second time, a complaint for foreclosure case # 12-30871-ca-21 (STATE CASE) in Miami-Dade County against the Plaintiff. The complaint was signed by Faith Dominique Everett, Bar #96339.

33.     Attached to the complaint was an alleged copy of the Mortgage, the Note and a copy of the suspicious assignment of Mortgage created and recorded by Marshall C. Watson P.A. on October 22, 2009, **three days after** the filing of the first complaint.

34.     On August 9, 2012, Plaintiff received a dunning letter from Marshall C Watson PA. On August 13, Plaintiff sent a validation letter to Marshall C. Watson P.A.

35.     Marshall C. Watson P.A never responded to Plaintiff validation request and continued its collection activities in a full violation of the F.D.C.P.A. 1692g.

36.     On or about August 16, 2012 Plaintiff was served a summons and complaint from ONEWEST attempting to foreclosure on the Plaintiffs' property for a second time.

37.     On December 7, 2012 The Florida Bar extracted a guilty plea from Marshall C. Watson for failing to develop foreclosure policies in line with the rules of professional

ethics for Florida Attorneys and also routinely filing documents in Florida courts that were illegally executed and/or notarized. According to SUNBIZ.ORG, Marshall C. Watson P.A. changed its business name to CHOICE LEGAL GROUP P.A. (CLEGAL) on December 31, 2012.

36. An inspection of the assignment attached to the complaint shows that it was allegedly executed by Sucham Murray as authorized signatory for MERS Inc. as nominee for IndyMac Bank FSB PURPORTING TRANSFERING THE Mortgage and the Note to ONEWEST on September 14, 2009.Texas Notary Stacie Lynette Myers purportedly notarized Murray's signature. Jonathon Goulish and Cheryl Hutchinson purportedly were witnesses to the subject assignment (Exhibit D assignments of mortgage).

37. The address for MERS Inc. on the assignment is 1595 Springhill Road, #310 Vienna, VA22182. The address for ONEWEST is 2900 Esperanza Crossings, Austin TX 78758. The Notary that purportedly notarized Murray's signature is Texas Notary, **not a Virginia Notary. This act could be constructed as Notary Fraud.**

38. Further inspection of alleged assignment shows that Sucham Murray could not have been signing for MERS Inc. as Nominee for IndyMac Bank FSB on September 14, 2009. IndyMac Bank FSB was out of business on the date alleged assignment was executed. IndyMac was shut down by the OTC on July 11, 2008. At the time MERS Inc. was acting as nominee for IndyMac Bank FSB, IndyMac Bank FSB was not a member for MERS Inc. anymore.

39. Numerous documents recorded in registries of deeds around the country reveals a wide variance of Murray's signature while signing for various entities. Murray is believed to be a robo-signer or one acting outside her legal scope and without signatory authority.

40. A LinkedIn Profile shows that Sucham Murray worked as an Assistant Vice-President, Bankruptcy for ONEWEST from March 2007-April 2013.

41. There is no documentation that indicates that Sucham Murray was an authorized signatory of MER, Inc. with the authority to assign the subject Mortgage as nominee for IndyMac Bank FSB ON 9/14/2009; the date alleged assignment was executed.

42. A LinkedIn Profile was also found for witness Jonathon Goulish. Goulish's Profile shows he was an On-Site Operation Manager for Lender Processing Services Inc. (LPS) in Austin TX from March 2009-January 2013.

43. Lender Processing Services Inc. (LPS), along with Marshal C. Watson was under investigation by the Florida Attorney General for this very conduct of submitting fraudulent paperwork into the Court and Public records.

44. On line 3 of the General Allegations of the complaint ONEWEST claimed to be the servicer of the loan and the ''holder'' of the note. Also ONEWEST claimed that Federal National Association (FANIE MAE) is the owner of the note and has authorized ONEWEST to bring action to collect on the alleged debt.

45. ONEWEST has failed to provide evidence of the authority given by FANIE MAE as the alleged owner of the Note.

46. According to FLA R CIV P 1.110(B), the STATE CASE was allegedly verified by Forrest McKnight, Assistance Secretary for ONEWEST on July 25, 2012.

47. Plaintiff was never notified of all the assignments of Mortgage and Note that has taken place during the life of the loan as required by RESPA and TILA and also stated on section 20 of the Mortgage.

48. Defendants ONEWEST and INDYMAC never provide a Notice of Acceleration as required by section 22 of the Mortgage and which is a condition precedent for the bringing of a foreclosure action.

49. **On August 13, 2012 and on September 4 2012,** Plaintiff sent a letter (RESPA letter) by certified mail to Defendants ONEWEST and INDYMAC. The letter demanded certain documents and the answer to questions regarding the servicing of Plaintiff's mortgage.

50. **Defendants ONEWEST and INDYMAC have not responded to the entire RESPA letter.**

51. On August 28, 2012 Plaintiffs' sent a Validation letter by certified Mail to Defendants ONEWEST and INDYMAC. Defendants have failed to respond.

52. On September 4, 2012 Plaintiffs' filed a Motion for extension of Time and a Notice of Dispute for the alleged debt on MIAMI-DADE County Court for the STATE CASE. Said Notice was a second request for validation to all parties

53. **Defendants ONEWEST, INDYMAC, CLEGAL, DOMINIQUE, DUENAS and JDOE have failed to respond to Plaintiffs' Notice of Dispute and instead continue collection effort without providing a proper Validation of debt.**

54. On March 27, 2013 Attorney DUENAS from C.LEGAL filed a document title ''Plaintiff's witness and exhibit list'' for the STATE CASE, continuing collection activities without validating alleged debt in dispute.

55. Plaintiff is seeking actual damages because on May 29, 2013 a final hearing was heard for the STATE CASE and a final judgment was entered. Attorney JDOE from CLEGAL was representing ONEWEST during this collection action in complete violation of the FDCPA in spite of the fact that alleged debt was in dispute.

56. During the hearing ONEWEST offered the testimony of one witness, George Kamuck, an alleged employee of ONEWEST. George Kamuck's testimony about business he reviewed on his computer screen was a violation of the Rules of Evidence.

57. George Kamuck acted as a debt collector for ONEWEST during the final hearing which was an attempt to collect an alleged an unverified debt.

58. On August X, 2013, Plaintiff filed a Complaint with the Office of the Consumer Financial Protection Bureau( CFPB) The Bureau, against all the Defendants for their violation of the Dodd-Frank Act 12 **USC §5531 and 12 USC §5536** in their attempt to collect an unverified debt foreclosing on Plaintiff's property.     **59. All the Defendants engage in unfair, deceptive, or abusive acts or practices (collectively, UDAAPs) in violation of the Dodd-Frank Act12 USC §5531 and 12 USC §5536:**

A. 12 USC §5531. Prohibiting unfair, deceptive, or abusive acts or practices (a) **in general;**

The Bureau may take any action authorized under part E to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a

consumer financial product or service, or the offering of a consumer financial product or service.

B. 12 USC §5536. Prohibiting acts

(a) **in general;**

It shall be unlawful for—

(1) any covered person or service provider—

(A) to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law; or

(B) to engage in any unfair, deceptive, or abusive act or practice;

## COUNT I
### VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA), 12 U.S.C. §2605 BY DEFENDANTS ONEWEST and INDYMAC

60. Paragraphs 1 through 59 are realleged as though fully set forth herein.

61. Defendants ONEWEST and INDYMAC " servicers'' of a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605.

62. Plaintiffs' written requests for information about his account and correction of Defendants' errors were ''qualified written requests'' ("QWR") within the meaning of RESPA.  Defendant failed to acknowledge the receipt of said QWR within 5 days.

64. ONEWEST and INDYMAC deliberately failed to respond in a proper and timely manner to Plaintiff's ''qualified written requests'' for information about, and corrections to, his mortgage account, in violation of 12 U.S.C. §2605(e).

WHEREFORE, Plaintiff demands judgment against ONEWEST and INDYMAC for a proper accounting and application of his mortgage payments and for actual, statutory, treble and/or punitive damages, and attorney's fees and costs, along with any other and further relief as the court deems just and proper, pursuant to12 U.S.C. §2605.

## COUNT II
## VIOLATION OF TRUTH IN LENDING ACT (TILA), 15 U.S.C. §1641
## BY DEFENDANTS ONEWEST and INDYMAC

64. Paragraphs 1 through 59 are realleged as though fully set forth herein.

65. A new creditor must provide notice of its status pursuant to 15 U.S.C. §1641(g):

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

WHEREFORE, Plaintiff demands judgment for damages against ONEWEST and INDYMAC actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1640(a).

## COUNT III
## VIOLATION OF FAIR DEBT COLLECTION
## PRACTICES ACT (FDCPA), 15 U.S.C. §1692
## BY DEFENDANTS ONEWEST, INDYMAC, C.LEGAL, DOMINIQUE, DUENAS,
## JDOE, KAMUCK, MCNIGHT and MURRAY

66. Paragraphs 1 through 59 are realleged as though fully set forth herein.

67. Plaintiffs are consumers within the meaning of the FDCPA, 15 U.S.C. §1692a (3).

68. Defendants ONEWEST, INDYMAC, C.LEGAL, DOMINIQUE, DUENAS JDOE, KAMUCK, MCNIGHT and MURRAY are debt collectors within the meaning of the FDCPA, 15 U.S.C. §1692a (6).

69. Defendants violations are also (**unfair, deceptive, or abusive acts or practices,** UDAAPs) violations under the Dodd-Frank Act.

70. Defendants ONEWEST, INDYMAC, C.LEGAL, DOMINIQUE, DUENAS JDOE, KAMUCK, MCNIGHT and MURRAY violated the FDCPA. Defendants' violations include, but are not limited to, the following:

(a) Defendants violated 15 U.S.C. §1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person.

(b) Defendants violated 15 U.S.C. §1692e (2) by falsely representing the character, amount, or legal status of any debt.

(c) Defendants violated 15 U.S.C. §1692e (6) by sale or transfer of any interest in the debt will cause the consumer to lose any claim or defense to payment of the debt.

(d) Defendants violated 15 U.S.C. §1692e(8) by communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(e) Defendants violated 15 U.S.C. §1692e (10) by the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(f) Defendants violated 15 U.S.C. §1692e (14) by the use of any name other than the true name of the debt collector's business.

(g) Defendants violated 15 U.S.C. §1692f (6) taken or threatened to unlawfully repossess or disable the consumer's property.

WHEREFORE, Plaintiff demands judgment for damages against ONEWEST, INDYMAC, C.LEGAL, DOMINIQUE, DUENAS, JDOE , KAMUCK, MCNIGHT and MURRAY actual or statutory damages, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1692k.

## COUNT IV
### VIOLATION OF THE FLORIDA CONSUMER COLLECTIONS PRACTICES ACT (FCCPA) FLA STAT §559(Part VI) BY DEFENDANTS ONEWEST, INDYMAC, C.LEGAL, DOMONIQUE, DUENAS, JDOE, KAMUCK, MCNIGHT and MURRAY

71. Plaintiff alleges and incorporates the information in paragraphs 1 through 59

72. Plaintiffs are consumers within the meaning of §559.55(2).

73. Defendants ONEWEST, INDYMAC, C.LEGAL, DOMINIQUE, DUENAS, JDOE, KAMUCK, MCNIGHT and MURRAY are debt collectors within the meaning of §559.55(6).

74. Florida Statute 559.715 states: *This part does not prohibit the assignment, by a creditor, of the right to bill and collect a consumer debt.  However, the assignee must give the debtor written notice of such assignment as soon as practical after the assignment is made, but at least 30 days before any action to collect the debt.  The assignee is a real party in interest and may bring an action to collect a debt that has been assigned to the assignee and is in default.*  Defendants did not comply with Florida Rule 559.715 which is a condition precedent before filing their complaint and obtaining a judgment in the state court case.

75. Defendants violated §559.72(9) by claiming, attempting or threatening to enforce a debt knowing that the debt was not legitimate. Defendants continue to collect the alleged deb in dispute without proper verification.

## COUNT V
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT BY DEFENDANTS ONEWEST, INDYMAC, C.LEGAL, DOMINIQUE, DUENAS,JDOE, KAMUCK, MCNIGHT and MURRAY

76. Plaintiff alleges and incorporates the information in paragraphs 1 through 59

77. The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides for a civil cause of action for "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. §501.20491 (2005).

78. The provisions of the Act are to be liberally construed to promote the following policies:

**a. To simplify, clarify, and modernize the law governing consumer protection, unfair trade practices; and**

**b. to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. FLA. STAT. §501.202(1) and (2).**

79. At all times relevant hereto, LEONARDO CAVERO and LIDIA CAVERO were "consumers" as defined by FLA. STAT §501.203(7).

80. At all-time relevant hereto, these defendants were engaged in "trade or commerce" as defined by FLA. STAT. §501.203 (8).

81. Either, any, or all of the Defendants in this count, created the documents purportedly transferring the subject mortgage to ONEWEST

82. It is unclear who the true holder in due course is since there are at least four missing assignments.

83. These defendants' violated the Act by engaging in unfair and deceptive acts and practices including, but not limited to:

a.   The Defendants' were not the proper party to sue.

b.   The Defendants' have no contract with the Plaintiff.

c. The Defendants' ONEWEST, INDYMAC and CLEGAL prematurely filed foreclosure suit against the Plaintiff despite having no contract between Defendants' and Plaintiffs.

d. Plaintiffs never received constructive notice of four missing assignment as required by State and Federal law.

e.   There is no proof of payment of Documentary Stamp Taxes on four assignments; therefore as a matter of law the assignments are void.

f. As a matter of law there is no valuable consideration in violation of the Uniform Commercial Code, and the foreclosure is thereby void.

g. As a matter of law ONEWEST, INDYMAC and CLEGAL had no right to foreclose and the Final Judgment is unlawful and void on its face.

84. These Defendants violated the act by engaging the following acts of unconscionable conduct, or unfair deceptive practices in the conduct of trade or commerce. Defendants' claimed to be the owner and holder of the subject note when in fact the true owner of the beneficial interest is unknown, and the Defendants had no right to suit.

85. As a direct result of the Defendants' actions, Plaintiffs have been damaged, and are about to lose real property and the equity established in Plaintiffs home, Plaintiffs credit is slandered by the wrongful foreclosure and deceptive practices employed to achieve same.

86. Plaintiff has been harmed by defendants' deception and unconscionable conduct. Such acts, the wrongful attempts to collect the note, and the filing of a baseless foreclosure complaint constitute a deceptive business practice and are unconscionable as per se violations of a variety of consumer protection laws enacted to prevent the very conduct engaged in by the defendants in this case.

**WHEREFORE**, Plaintiffs LEONARDO CAVERO and LIDIA CAVERO incurred substantial damages as a direct and proximate result of defendants' illegal conduct including harm to Plaintiffs credit, possible loss of real property and associated equity, pain and suffering caused by the actions perpetuated upon them. Attorney's fees and costs are sought pursuant to FLA STAT. §501.2105 for the possible loss of his home. Plaintiff respectfully request that this Court award damages, disgorgement of legal fees paid to Defendants', and any other just and appropriate relief under the law for the possible loss of his home.

## COUNT VI
### CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO ALL DEFENDANTS ONEWEST, INDYMAC, C.LEGAL, DOMINIQUE, DUENAS, JDOE, KAMUCK, MCNIGHT and MURRAY

87. Plaintiffs allege and incorporate the information in paragraphs 1 through 59

88. Plaintiffs contend that the acts and omissions of the subject defendants, and each of them, constitute extreme and outrageous conduct.

89. Plaintiffs further contend that the subject defendants and each of them, engaged in such conduct either intentionally or with reckless disregard as to the effect on Plaintiff.

90. As a result of said extreme and outrageous conduct by the subject Defendants, and each of them, Plaintiffs has suffered severe emotional distress, will be deprived of their home.

91. Defendants' go far beyond those of pursuing its purported economic interests.

92. Defendants' have superior knowledge of finance and legalese.

93. Defendants' have pursued similar activities against hundreds or thousands of Florida homeowners making said conduct all the more extreme and outrageous.

94. It is extreme and outrageous that Defendants' knowingly and intentionally violated Federal and State law to deprive the Plaintiffs  of their home in violation of Federal and State law as more fully stated herein.

95. Defendants' are well aware that the sale of the Plaintiff's home under the circumstances could be extreme and outrageous and that it would cause Plaintiffs extreme emotional distress, yet Defendants' and each of them did so anyway.

96. Collectively, Defendants' activities and those of its agents involved unfair practices; misrepresentations were inherently unreasonable and malicious.

97. As a result of the Defendants' extreme and outrageous conduct, Plaintiffs has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

**WHEREFORE**, Plaintiffs respectfully request that this Court award damages, and any other just and appropriate relief under the law, including but not limited to, attorneys' fees and costs for the possible loss of his home.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: November 22, 2013

Respectfully submitted,

Leonardo and Lidia Cavero

14933 SW 179 ST

MIAMI FL 33187

Phone #:305-510-3564

Email:leoadi11@hotmail.com

# EXBIHIT –A-

# ORIGINAL

## NOTE

September 4, 2007          DORAL          Florida
[Date]                    [City]           [State]

14933  SW 179 ST, MIAMI, FL 33187
[Property Address]

**1.     BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $     313,600.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is     INDYMAC BANK, F.S.B., A
FEDERALLY CHARTERED SAVINGS BANK     . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.     INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     6.375     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.     PAYMENTS**

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the     1st     day of each month beginning on     November,  2007   . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     October  1, 2037     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at     INDYMAC BANK, F.S.B., P.O. BOX 78826, PHOENIX,
AZ 85062-8826                              or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $     1,956.46

**4.     BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Loan No:                          DOCUMENT                    MIN: 10005540

Florida Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3210 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 1 of 3                      13691FL 08/00
www.compliancesource.com                                              ©2000, The Compliance Source, Inc.

L.C

11-26239                                                    095768

**5.**   **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.**   **BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     5.000     % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

   **(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   **(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.**   **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.**   **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.**   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.**   **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same

date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

11. **DOCUMENTARY TAX**
The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HANDS AND SEALS OF THE UNDERSIGNED.

_____ (Seal)
LEONARDO CAVERO                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Pay To The Order Of                    [Sign Original Only]

Without Recourse
IndyMac Bank, F.S.B.
By:

Gail Doyle
First Vice President

Loan No: ███████

Florida Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                Page 3 of 3
www.compliancesource.com

Form 3210 01/01
12601FL 08/00
©2000, The Compliance Source, Inc.

# EXBIHIT –B-

CFN 2007R0907367
OR Bk 25923 Pgs 4553 - 4566; (14pgs)
RECORDED 09/13/2007 15:15:56
MTG DOC TAX 1,097.60
INTANG TAX 627.20
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Prepared by or under the supervision of:
DEBRA SOHL

*[Name of Natural Person]*
4010 BOY SCOUT BLVD. SUITE 600

*[Street Address]*
TAMPA, FL 33607

*[City, State Zip Code]*

INO11C *195*4940
1278*37965
HM

After recording please return to:
INDYMAC BANK, F.S.B., C/O DOCUMENT
MANAGEMENT
*[Company Name]*

*[Name of Natural Person]*
BLDG B, 901 E 104TH ST, SUITE 400/500

*[Street Address]*
KANSAS CITY, MO 64131

*[City, State Zip Code]*

DOCUMENT
REDACTED

―――――――――――――――― *[Space Above This Line For Recording Data]* ――――――――――――――――

# MORTGAGE

MIN: 1000554▇▇▇▇▇▇

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)**    "**Security Instrument**" means this document, which is dated   September 4, 2007   , together with all Riders to this document.

**(B)**    "**Borrower**" is   LEONARDO CAVERO AND LIDIA CAVERO HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

**(C)**    "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

DOCUMENT
REDACTED

Loan No: ▇▇▇▇▇▇▇

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    MERS Modified Form 3010 01/01
—THE COMPLIANCE SOURCE, INC.—                    Page 1 of 14                    14301FL 11/04
www.compliancesource.com                    © 2004, The Compliance Source, Inc.

L.C L.C

11-26239

O957618

(D)    "Lender" is INDYMAC BANK, F.S.B., A FEDERALLY CHARTERED SAVINGS BANK

Lender is a   Federal Savings Bank                    organized and existing under the laws of
United States of America                     Lender's address is   155 NORTH LAKE
AVENUE, PASADENA, CA 91101

(E)    "Note" means the promissory note signed by Borrower and dated   September 4, 2007   . The
Note states that Borrower owes Lender   three hundred thirteen thousand six hundred
and NO/100ths                         Dollars (U.S. $ 313,600.00         )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not
later than   October 1, 2037   .

(F)    "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.

(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider       ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider            ☐ Revocable Trust Rider
☐ Other(s) [specify]

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable
judicial opinions.

(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association or
similar organization.

(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer,
or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions; transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.

(L)    "Escrow Items" means those items that are described in Section 3.

(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for:  (i) damage to,
or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance
in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.

Loan No: █████████

L.C  LC

(O)   "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)   "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)   "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

County                         of                    MIAMI–DADE
*[Type of Recording Jurisdiction],*       *[Name of Recording Jurisdiction]*

which has a legal description of:

LOT 19, BLOCK 2, MAYTE SOUTH, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 153, AT PAGE 94, OF THE PUBLIC RECORDS OF MIAMI–DADE COUNTY, FLORIDA.

which currently has the address of            14933   SW 179 ST
                                                    *[Street]*

MIAMI                   ,    Florida   33187
          *[City]*                *[Zip Code]*

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:  .
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency.  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Loan No: ▮▮▮▮▮▮

L.C  LC

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under

---

Loan No: ▮▮▮▮▮

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 4 of 14

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.

L.C L.C

RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater

L.C L.C

or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Loan No: ▮▮▮▮▮▮

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 7 of 14

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc.

L.C  L.C

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument.  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12.  Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower.  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower.  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13.  Joint and Several Liability; Co-signers; Successors and Assigns Bound.**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several.  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"):  (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14.  Loan Charges.**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees.  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's

Loan No: ▓▓▓▓▓▓▓

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 9 of 14

MERS Modified Form 3010 01/01

14001FL 11/04
© 2004, The Compliance Source, Inc.

L.C  L.C

acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more

Loan No: ▮▮▮▮▮▮▮▮

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 10 of 14

MERS Modified Form 3010 01/01

14301FL 11/04
© 2004, The Compliance Source, Inc.

*L.C   L.C*

of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

L.C   L.C

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies.  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise).  The notice shall specify:  (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23.  Release.  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.  Attorneys' Fees.  As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25.  Jury Trial Waiver.  The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

Loan No: ▮▮▮▮▮▮▮

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 12 of 14

MERS Modified Form 3010 01/01
14001FL 11/04
© 2004, The Compliance Source, Inc.

L.C  L.C

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

Witnesses:

_____            _____ (Seal)
                                                                        -Borrower
                                            LEONARDO CAVERO
                                                        [Printed, Typewritten, or, Stamped Name]

_____            Post-Office Address:  14933  SW 179 ST, MIAMI, FL
Printed, Typewritten, or Stamped Name:                           33187

                                            X_____ (Seal)
_____                                        -Borrower
                                            LIDIA CAVERO
                                                      * [Printed, Typewritten, or, Stamped Name]

_____            Post-Office Address:  14933  SW 179 ST, MIAMI, FL
Printed, Typewritten, or Stamped Name:                           33187

                                            _____ (Seal)
                                                                        -Borrower
                                                        [Printed, Typewritten, or, Stamped Name]

                                            Post-Office Address:

                                            _____ (Seal)
                                                                        -Borrower
                                                        [Printed, Typewritten, or, Stamped Name]

                                            Post-Office Address:

OR BK 25923 PG 4566
LAST PAGE

State of Florida
County of Miami-Dade

The foregoing instrument was acknowledged before me this Sept. 4, 2007,
[date] by LEONARDO CAVERO and LIDIA CAVERO

[name of person acknowledging],

who is personally known to me or who has produced Drivers nunsr.
[type of identification] as identification.



Signature of Person Taking Acknowledgment

NUNEZ Luis

Name Typed, Printed or Stamped

Luis A. Nune
My Commiss
Expires April

Title or Rank

Serial Number, if any

Luis A. Nunez
My Commission DD312047
Expires April 20, 2008

Luis A. Nunez
My Commission DD312047
Expires April 20, 2008

Florida Mortgage-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
Page 14 of 14

MERS Modified Form 3010 01/01
14301FL 11/04
© 2004, The Compliance Source, Inc

L.C L.C

# EXBIHIT –C-

ONEWEST BANK FSB,
Plaintiff,
vs.
LEONARDO CAVERO, et al,
Defendants.

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION:
CASE NO.:

12 - 3 0 8 7 1 CA 21

### SUMMONS
### PERSONAL SERVICE ON AN INDIVIDUAL
### IMPORTANT

TO DEFENDANT: **LIDIA CAVERO**
14933 SW 179TH STREET, MIAMI, FL 33187

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint with the Clerk of this Court. A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phonebook).

If you choose to file a written response yourself, at the same time you file your written response to the Court you must also mail or take a copy of your written response to the "Plaintiff/Plaintiff's Attorney" named below.

**MARSHALL C. WATSON, P.A., ATTORNEY FOR PLAINTIFF**
1800 NW 49TH STREET, SUITE 120, Fort Lauderdale, FL 33309
Telephone:      (954) 453-0365
Facsimile:      (866)-651-6098
Toll Free:      (800) 441-2438

**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

EACH SHERIFF OF THE STATE:

YOU ARE HEREBY COMMANDED to serve the Summons and a copy of the Complaint in this lawsuit on the above-named Defendant(s).

Dated this _____ day of AUG 6 2012 , 20___.

HARVEY RUVIN
Clerk of the Circuit Court

BY: OVANKHA GONZALEZ
Deputy Clerk

(SEAL)

(See reverse side)(Vease al reves)(Voir de l'autre cote de)

11-26239

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION:
CASE NO.:

ONEWEST BANK FSB,
          Plaintiff,

vs.

LEONARDO CAVERO;  BANK OF
AMERICA NA; LIDIA CAVERO;
IUNKNOWN TENANT IN POSSESSION
OF THE SUBJECT PROPERTY,
          Defendants.

_____

## NOTICE OF LIS PENDENS

TO THE ABOVE STYLED DEFENDANTS AND ALL OTHERS WHOM IT MAY CONCERN:

     YOU ARE HEREBY NOTIFIED of the institution of this action by Plaintiff against you seeking to foreclose a mortgage recorded in Official Records Book 25923 at Page 4553 on the following property in Miami-Dade County, Florida:

     **LOT 19, BLOCK 2, MAYTE SOUTH, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 153, AT PAGE 94, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA**

including the buildings, appurtenances, and fixtures located thereon.

DATED  8|2|2012

Law Offices of Marshall C. Watson, P.A
1800 NW 49th Street, Suite 120
Fort Lauderdale, Florida 33309
Telephone:      (954) 453-0365
Facsimile:       (866)-651-6098
Toll Free:        (800) 441-2438

By: _____

**Faith Dominique Everett**
Bar #96339

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE
COUNTY, FLORIDA
CIVIL DIVISION:
CASE NO.:

ONEWEST BANK FSB,
                Plaintiff,

vs.

LEONARDO CAVERO;  BANK OF
AMERICA NA; LIDIA CAVERO;
UNKNOWN TENANT IN POSSESSION
OF THE SUBJECT PROPERTY,
                Defendants.

## VERIFIED COMPLAINT

The Plaintiff, **ONEWEST BANK FSB**, sues the Defendants named in the caption hereof and alleges:

### COUNT I

1. This is an action to foreclose a mortgage on real property in **MIAMI-DADE** County, Florida.

2. On or about **September 4, 2007, LEONARDO CAVERO** executed and delivered a promissory note and **LEONARDO CAVERO AND LIDIA CAVERO** executed and delivered a Mortgage securing payment of the same to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED AS NOMINEE FOR INDYMAC BANK F.S.B.**, which mortgage was recorded in the Official Records Book **25923**, Page **4553**, of the Public Records of **MIAMI-DADE** County, Florida and which mortgaged the property described therein, then owned by and in possession of said mortgagor. A copy of the note, assignment of mortgage, and mortgage are attached hereto and made a part hereof.

3. Federal National Mortgage Association is the owner of the Note. Plaintiff is the servicer of the loan and is the holder of the Note. Federal National Mortgage Association has authorized Plaintiff to bring this present action.

4. Defendant(s), **LEONARDO CAVERO AND LIDIA CAVERO**, own(s) the property.

5. There has been a default under the note and mortgage held by Plaintiff in that the payment due **June 1, 2009** and all subsequent payments have not been made. Plaintiff declares the full amount due under the note and mortgage to be now due.

6. All conditions precedent to the filing of this action have been performed or have occurred.

11-26239

7. There is now due, owing and unpaid to the Plaintiff as of the date of the filing of this complaint the following amounts on principal of said note and mortgage: unpaid principal balance: **$307,809.28**, plus interest, escrow, title search expenses for ascertaining necessary parties to this suit, title search, title exam, filing fee, and attorney's fees and costs.

8. Plaintiff has obligated itself to pay the undersigned attorneys a reasonable fee for their services herein. Pursuant to the loan documents Plaintiff is entitled to an award of attorney's fees.

9. Defendant, as **UNKNOWN TENANT** in possession of the subject property, may claim some interest in or lien upon the subject property arising from being in actual possession of same, but interest, if any, is subject and inferior to the lien of Plaintiff's mortgage.

10. The Defendant, **BANK OF AMERICA NA** may claim some interest in or lien upon the subject property by virtue of **MORTGAGE**, which is recorded at Official Records Book **26073**, Page **4702** of the Public Records of **MIAMI-DADE** County. Said interest, if any, is subject and inferior to the lien of Plaintiff's mortgage.

**WHEREFORE**, Plaintiff prays as follows:

(a) That this Court will take jurisdiction of this cause, the subject matter and the parties hereto.

(b) That this Court ascertain and determine the sums of money due and payable to the Plaintiff from the Defendant(s), including without limitation principal, interest, advances, attorney fees, and costs pursuant to the loan documents.

(c) That the sum of money found to be due as aforesaid be decreed by this Court to be a lien upon the lands described in Plaintiff's mortgage.

(d) That such lien be foreclosed in accordance with the rules and established practice of this Court, and upon failure of the Defendants to pay the amount of money found to be due by them to the Plaintiff, the said land be sold to satisfy said lien.

(e) That this Court decree that the lien of the Plaintiff is superior to any and all right, title or interest of the Defendants herein or any person or parties claiming by, through or under them since the institution of this suit.

(f) That all right, title or interest of the Defendants or any person claiming by, through or under them be forever barred and foreclosed.

11-26239

(g) That this Court grants general relief in this cause as in its discretion might be just and proper including, but not limited to, a deficiency judgment, except where a discharge is applicable, if the proceeds of the sale are insufficient to pay Plaintiff's claim.

## FLA. R. CIV. P. 1.110(b) VERIFICATION

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Printed name: **Forrest McKnight**          JUL 2 5 2012

Title: **Assistant Secretary**

ONEWEST BANK FSB

Law Offices of Marshall C. Watson, P.A
1800 NW 49th Street, Suite 120
Fort Lauderdale, Florida 33309
Telephone:     (954) 453-0365
Facsimile:     (866)-651-6098
Toll Free:     (800) 441-2438

By:

**Faith Dominique Everett**
Bar #96339

11-26239

# EXBIHIT –D-

CFN  2009R0767938
OR Bk 27058 Pg 2522i (1pg)
RECORDED 10/22/2009 15:46:35
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

RECORD & RETURN TO:
Law Office of Marshall C. Watson
1800 NW 49th Street, Suite 120
Fort Lauderdale, Florida 33309
Telephone: (954) 453-0365
Facsimile: (954) 771-6052

RECORD AND
RETURN TO

## ASSIGNMENT OF MORTGAGE

*KNOW ALL MEN BY THESE PRESENTS:*

*THAT* **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED AS NOMINEE FOR INDYMAC BANK F.S.B.** residing or located at 1595 Springhill Road, # 310 Vienna, VA 22182 herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto **ONEWEST BANK FSB** residing or located at: 2900 Esperanza Crossing Austin, TX 78758 herein designated as the assignee, the mortgage executed by LEONARDO CAVERO A/K/A LEONARDO A. CAVERO AND LIDIA CAVERO recorded September 13, 2007 in Dade County, Florida at BOOK 25923 and PAGE 4553 encumbering the property more particularly described as follows:

> LOT 19, BLOCK 2, OF MAYTE SOUTH, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 153, AT PAGE 94 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Together with the note and each and every other obligation described in said mortgage and the money due and to become due thereon

TO HAVE AND TO HOLD the same unto the said assignee, its successors and assigns forever, but without recourse on the undersigned.

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officer and its corporate seal to be hereto affixed this 14 day of Sep , 2009.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS INCORPORATED AS NOMINEE FOR
INDYMAC BANK F.S.B.

ATTEST:
PRINT NAME: Suchan Murray
Authorized Signatory

Signed in the presence of:

WITNESS:
Print Name: Jonathan Goulish

WITNESS:
Print Name: Cheryl Hutchinson

STATE OF Texas

COUNTY OF Travis

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on this the 14 day of Sep , 2009 , within my jurisdiction, the within named who acknowledged to me that (s)he is Suchan Murray and who is personally known to me or has provided as identification, that for and on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED AS NOMINEE FOR INDYMAC BANK F.S.B. and as its act and deed (s)he executed the above and foregoing instrument, after first having been duly authorized by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED AS NOMINEE FOR INDYMAC BANK F.S.B. to do so.

WITNESS my hand and official seal in the County and State last aforesaid this 14 day of Sep , 2009.

NOTARY PUBLIC

STACIE LYNETTE MYERS
Notary Public, State of Texas
My Commission Expires
June 05, 2013

09-57618

Recording Requested By:
First Franklin Financial Corp

When Recorded Return To:

FIRST FRANKLIN FINANCIAL CORP
2150 N FIRST STREET
SAN JOSE, CA 95131-
Wilshire Credit Corporation
14523 SW Millikan Way, #200
Beaverton, OR 97005

T-999
715254

CFN 2004R0782367
OR Bk 22637 Ps 0002; (1ps)
RECORDED 09/08/2004 14:26:45
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

## CORPORATE ASSIGNMENT OF MORTGAGE

DADE COUNTY, FLORIDA
SELLER'S SERVICING#: 5698723 "CAVERO" FFFC01
Date of Assignment: 03/28/2001
Assignor: FIRST FRANKLIN FINANCIAL CORPORATION at 2150 N. FIRST STREET, SUITE
600, SAN JOSE, CA 95131    To:
Assignee:

Wilshire Credit Corporation
14523 SW Millikan Way, #200
Beaverton, OR 97005

LOT 19, in Block 2 of Mayte South. According to the Plat
thereof, as recorded in Plat book 153, at Page 94 of Dade County
Florida

Executed By: LIDIA CAVERO AND LEONARDO CAVERO   To: FIRST FRANKLIN FINANCIAL
CORPORATION
Mortgage Dated 03/20/2001 and Recorded 3/28/2001 As 01R149108
In DADE COUNTY, FLORIDA.
BOOK:19571 PG:752.

Property Address:  14933 S.W. 179TH STREET, MIAMI, FL, 33187

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and
NO/100ths DOLLARS and other good and valuable consideration, paid to the above
named Assignor, the receipt and sufficiency of which is hereby acknowledged, the
said Assignor hereby assigns unto the above-named Assignee, the said Mortgage
together with the Note or other evidence of indebtedness (the "Note"), said Note
having an original principal sum of $28,000.00 with interest, secured thereby,
together with all moneys now owing or that may hereafter become due or owing in
respect thereof, and the full benefit of all the powers and of all the covenants
and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property
unto the said Assignee forever, subject to the terms contained in said Mortgage
and Note.

FIRST FRANKLIN FINANCIAL CORPORATION
On   March 28, 2001

By: _____
SIU LAU / AVP OF ACCOUNTING

_____
VONA BRAMLAGE / VP OF ACCOUNTING
AND FINANCE

WITNESS _____
SUSAN LEE

WITNESS _____
KATHRYN VALDEZ

STATE OF California
COUNTY OF Santa Clara

ON March 28, 2001, before me, PEGGY MENDIOLA, a Notary Public in and for the
County of Santa Clara County, State of California, personally appeared SIU LAU /
AVP OF ACCOUNTING and VONA BRAMLAGE / VP OF ACCOUNTING and FINANCE, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.

_____
PEGGY MENDIOLA
Notary Expires: 01/01/2004  #1247924

PEGGY MENDIOLA
Commission # 1247924
Notary Public - California
Santa Clara County
My Comm. Expires Jan 1, 2004

(This area for notarial seal)

Prepared By: Diane Ortiz 2150 N. First Street, San Jose, CA 95131
SHL/20010328/0083 GENERIC DADE FL BAT: 53/5699723.KAMOR

Recording Requested By:
First Franklin Financial Corp

OFF. REC BK.

20110 PG 2916

01R724919 2001 DEC 31 08:05

RECORD AND RETURN TO :
DOCUMENT MANAGEMENT NETWORK
A division of HANOVER CAPITAL
POST OFFICE BOX 3980
EDISON, NJ 08818-3980

## CORPORATE ASSIGNMENT OF MORTGAGE

DADE COUNTY, FLORIDA
SELLER'S SERVICING#: 5699715 "CAVERO" FFFC01

2001-FF1

Date of Assignment: 03/28/2001
Assignor: FIRST FRANKLIN FINANCIAL CORPORATION at 2150 N. FIRST STREET, SUITE 600, SAN JOSE, CA 95131
Assignee: Chase Manhattan Mortgage Corp.

Executed By: LIDIA CAVERO JOINED BY HER HUSBAND LEONARDO CAVERO To: FIRST FRANKLIN FINANCIAL CORPORATION
Mortgage Dated 03/20/2001 and Recorded 3-26-01   As 01R49107
In DADE COUNTY, FLORIDA.   BK 19571 PG 732

Property Address:  14933 S.W. 179TH STREET, MIAMI, FL, 33187

KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Assignee together with the Note or other evidence of indebtedness (the "Note"), said Note having an original principal sum of $112,000.00 with interest, secured thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage and Note, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

FIRST FRANKLIN FINANCIAL CORPORATION
On   March 28, 2001

By: _____
SIU LAU / AVP OF ACCOUNTING

_____
VONA BRAMLAGE / VP OF ACCOUNTING
AND FINANCE

WITNESS _____
SUSAN LEE

WITNESS _____
KATHRYN VALDEZ

STATE OF California
COUNTY OF Santa Clara

ON March 28, 2001, before me, PEGGY MENDIOLA, a Notary Public in and for the County of Santa Clara County, State of California, personally appeared SIU LAU / AVP OF ACCOUNTING and VONA BRAMLAGE / VP OF ACCOUNTING AND FINANCE, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

_____
PEGGY MENDIOLA
Notary Expires: 01/01/2004  #1247924

PEGGY MENDIOLA
Commission# 1247924
Notary Public - California
Santa Clara County
My Comm. Expires Jan 1, 2004

(This area for notarial seal)

Prepared By: Diane Ortiz 2150 N. First Street, San Jose, CA 95131
SHL/2001032840042 GENERIC DADE FL BAT  53/5699715 KAMOR

RECORDED IN OFFICIAL RECORDS BOOK
OF DADE COUNTY, FLORIDA.
RECORD VERIFIED
HARVEY RUVIN
CLERK CIRCUIT COURT

OFF.
REC. 19321PG4403

DOCUMENT REVIEW

00 AUG 15 AM 9:29

When Recorded, Mail and Return To:
HFS Wholesale Document Verification
577 Lamont Rd.
P.O. Box 1247
Elmhurst, IL 60126 3576410

OOR496845 2000 OCT 16 09:47

RECORD TO: Requested And Prepared By:
Gary E. Thompson
ATLANTIC INTERNATIONAL
MORTGAGE COMPANY
2502 ROCKY POINT DRIVE, STE. 762
TAMPA, FL 33607-1447

TITLE: ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS:

THAT We, Atlantic International Mortgage Company party of the first part, in consideration of the sum of Ten Dollars, and other valuable considerations, received from or on behalf of ↓

party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell, assign, transfer, and set over unto said party of the second part a certain MORTGAGE bearing date the 9TH day of, JUNE, 2000 made by LEONARDO CAVERO, AN UNMARRIED MAN in favor of ATLANTIC INTERNATIONAL MORTGAGE COMPANY, A FLORIDA CORPORATION and recorded in Official Records Book 19157 Page 961 as Doc.# or Inst # OOR289592 of public records of MIAMI - DADE County, State of FLORIDA, on 6/16/00 in the amount of $ 131,000.00 upon the following described piece or parcel of land, situated and being in said County and State to-wit: Recorded on 06-16-00

14933 SW 179TH ST., MIAMI, FL. 33187 - LOT 19, BLOCK 2, OF MAYTE SOUTH, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BK. 153, PG. 94, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.
A.P.N. # : 30-5933-022-0290

ASSIGNED on 06-16-00 this day to Atlantic International Mortgage Company, BK. _____ PG. _____

In Witness Whereof, I have hereunto set my hand and seal on August 8, 2000.
Signed, sealed and delivered in the presence of:
ATLANTIC INTERNATIONAL MORTGAGE COMPANY

_____
Witness Signature
Angelica Quartaram
Printed Name

_____
Witness Signature
Gary E. Thompson
Printed Name

Signature

Adam C. Cline
Title
Senior Vice President

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH
On August 8, 2000 before me, the undersigned, a Notary Public in and for said County and State, personally appeared Adam C. Cline known to me to be the Senior Vice President of the corporation herein which executed the within instrument, that the seal affixed to said instrument is the corporate seal of said corporation that said instrument was signed and sealed on behalf of said corporation pursuant to its by-laws or a resolution of its Board of Directors and he/she acknowledges said instrument to be the free act and deed of said corporation.
Notary Public
My Commission Expires 06/22/02.

OFFICIAL NOTARY SEAL
BETHANY A LEWIS
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC753601
MY COMMISSION EXP. JUNE 22,2002

I do certify that the precise residence of the within named assignee is:

↓ Mortgage Electronic Registration Systems, Inc., its successors and assigns, as nominee for Household Finance Corporation, its successors and assigns, 64318 Miller Rd., Flint, MI 48501
MERS # 100046000035764103

PH. #: 1-888-679-0377

RECORDED IN OFFICIAL RECORDS BOOK
OF DADE COUNTY, FLORIDA
RECORD VERIFIED
HARVEY RUVIN
CLERK CIRCUIT COURT

3576410

CFN 2009R0767938
OR Bk 27058 Pg 2522; (1ps)
RECORDED 10/22/2009 15:46:35
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE

RECORD & RETURN TO:
Law Office of Marshall C. Watson
1800 NW 49th Street, Suite 120
Fort Lauderdale, Florida 33309
Telephone: (954) 453-0365
Facsimile: (954) 771-6052

**RECORD AND RETURN TO →**

## ASSIGNMENT OF MORTGAGE

*KNOW ALL MEN BY THESE PRESENTS:*

*THAT* MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED AS NOMINEE FOR INDYMAC BANK F.S.B. residing or located at 1595 Springhill Road, # 310 Vienna, VA 22182 herein designated as the assignor, for and in consideration of the sum of $1.00 Dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto ONEWEST BANK FSB residing or located at: 2900 Esperanza Crossing Austin, TX 78758 herein designated as the assignee, the mortgage executed by LEONARDO CAVERO A/K/A LEONARDO A. CAVERO AND LIDIA CAVERO recorded September 13, 2007 in Dade County, Florida at BOOK 25923 and PAGE 4553 encumbering the property more particularly described as follows:

LOT 19, BLOCK 2, OF MAYTE SOUTH, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 153, AT PAGE 94 OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

Together with the note and each and every other obligation described in said mortgage and the money due and to become due thereon

TO HAVE AND TO HOLD the same unto the said assignee, its successors and assigns forever, but without recourse on the undersigned.

*In Witness Whereof,* the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officer and its corporate seal to be hereto affixed this 14 day of Sep , 2009.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS INCORPORATED AS NOMINEE FOR
INDYMAC BANK F.S.B.

ATTEST:
PRINT NAME: Suchan Murray
Authorized Signatory

Signed in the presence of:

WITNESS:
Print Name: Jonathan Goulish

WITNESS: Cheryl Hutchinson
Print Name: Cheryl Hutchinson

STATE OF Texas

COUNTY OF Travis

PERSONALLY APPEARED BEFORE ME, the undersigned authority in and for the aforesaid county and state, on this the 14 day of Sep 2009, within my jurisdiction, the within named who acknowledged to me that (s)he is Suchan Murray and who is personally known to me or has provided as identification, that for and on behalf of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED AS NOMINEE FOR INDYMAC BANK F.S.B. and as its act and deed (s)he executed the above and foregoing instrument, after first having been duly authorized by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INCORPORATED AS NOMINEE FOR INDYMAC BANK F.S.B. to do so.

WITNESS my hand and official seal in the County and State last aforesaid this 14 day of Sep , 2009.

NOTARY PUBLIC

STACIE LYNETTE MYERS
Notary Public, State of Texas
My Commission Expires
June 05, 2013