148354

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  13-24307-CIV-COOKE /TORRES

LEONARDO CAVERO and LIDIA CAVERO,

  Plaintiffs,

v.

ONE WEST BANK FSB, INDYMAC
MORTGAGE SERVICES, CHOICE LEGAL
GROUP, P.A., FAITH DOMINIQUE EVERETT,
ESQ., JANE DOE, ESQ., GEORGE KAMUCK,
FOREST MCKNIGHT, and SUCHAN MURRAY,

  Defendants.
                                                                          /

## DEFENDANTS' CHOICE LEGAL GROUP, P.A.'S, FAITH DOMINIQUE EVERETT'S, AND JANE DOE, ESQ.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT[1]

COME NOW, the Defendants, CHOICE LEGAL GROUP, P.A. ("Choice Legal"), FAITH DOMINIQUE EVERETT, ESQ. ("Everett"), and JANE DOE, ESQ. ("Doe") (collectively, the "Choice Legal Defendants"), by and through their undersigned counsel and pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Florida, and hereby respectfully submit their Reply Memorandum of Law in support of the Defendants', Choice Legal Group, P.A.'s, Faith Dominique Everett's and Jane Doe, Esq.'s Motion to Dismiss Plaintiff's Amended Complaint (the "Motion to Dismiss") [D.E. 45].

---

[1] In their Response to Choice Legal Group, P.A.'s, Faith Dominique Everett's, and Jane Doe's Motion to Dismiss Plaintiffs' Amended Complaint and Supporting Memorandum of Law (the "Response") [D.E. 56], the Plaintiffs state that "Plaintiffs voluntarily withdraw their cause of action for Intentional Infliction of Emotion Distress (Count VI) as to all Defendants." D.E. 56, at n.1.  The Plaintiffs have not, however, filed any separate notice of voluntary dismissal, as of this date.  If Plaintiffs' footnote is insufficient to effect a voluntary dismissal, and Plaintiffs do not otherwise do so, the Choice Legal Defendants (in an abundance of caution) reserve the right to submit a reply memorandum of law as to Count VI.

I.  **The *Rooker-Feldman* Doctrine and Compulsory Counterclaims Bar Apply to Plaintiffs' Claims, Despite Their Seeking Damages.**

In arguing that the *Rooker-Feldman* doctrine is inapplicable because "Plaintiffs seek damages from Defendants, as debt collectors, for violations of various consumer protections statutes" (Response, at p. 5 [D.E. 56]), Plaintiffs incorrectly circumscribe the varieties of requested relief that could constitute an attack on the state court foreclosure judgment. This doctrine applies to claims that were actually raised in the state court and those that are "inextricably intertwined" with that state judgment. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009). The Eleventh Circuit has advanced two scenarios when a federal claim is considered inextricably intertwined with the state court judgment: "(1) where the success of the federal claim would 'effectively nullify' the state court judgment; and (2) <u>where the federal claim 'succeeds only to the extent that the state wrongly decided the issues</u>.'" *Springer v. Perryman*, 401 Fed.Appx. 457, 458 (11th Cir. 2010) (citation omitted) (emphasis added). Recently, in cases factually similar to this case, two different federal district courts sitting in Florida have ruled that they did not have subject matter jurisdiction to consider the claims of the Plaintiffs, former property owners, under the *Rooker-Feldman* doctrine. *See Figueroa v. Merscorp, Inc.*, 766 F.Supp.2d 1305 (S.D. Fla. 2011); *O'Neal v. Bank of America, N.A.*, 2012 WL 629817 (M.D. Fla. Feb. 28, 2012) (not reported).

In *Figueroa*, the district court held that the former property owner's claims were inextricably intertwined with the state foreclosure judgment since his claims could only succeed if the court implicitly or explicitly determined the Florida state court wrongly decided the foreclosure issue. *Id.*, at 1323-24. In so holding, the district court noted that to the extent any of the former property owner's claims only sought money damages, rather than an over-turning of the state court's judgment, its analysis and conclusion were not changed since any money damages would only be available if there was a wrongful foreclosure. *Id.*

In *O'Neal*, the district court considered claims under 42 U.S.C. § 1983, 28 U.S.C. § 2201, Florida Civil RICO, and FDCPA, that Bank of America had repeatedly submitted false representations and filings to the Florida state courts in foreclosure actions and related proceedings, including the bank's foreclosure proceedings against the former property owner plaintiffs. The district court found that the former property owners' claims were inextricably intertwined with the previous foreclosure judgments because "in order for any of Plaintiffs'

claims to succeed, this Court would have to find that the documents submitted by BofA in support of the foreclosures—documents that form part of the very predicate for the state-court foreclosure judgments themselves—were fraudulent." *O'Neal*, 2012 WL 629817 at *5 (*citing Figueroa*, 766 F.Supp.2d at 1324 ("If the Court concludes that … fraud occurred in the obtaining the foreclosures, and that the fraud damaged Plaintiff and class members, the Court would be saying the foreclosures were wrongfully granted and the resulting judgments are void")).

In this case, the Plaintiffs' claims center, in part, around their allegations that the Choice Legal Defendants relied upon a fraudulent assignment of mortgage for the purpose of the state-court foreclosure action against the Plaintiffs.[2] Similar to *Figueroa* and *O'Neal*, the Plaintiffs' claims based upon the Assignment (Ex. D to Amended Complaint [D.E. 11]) can only succeed if this Court finds that the Assignment was fraudulent and the foreclosure judgment wrongful.[3] Therefore, to the extent Plaintiff's claims depend upon the purportedly fraudulent Assignment, the claims are inextricably intertwined with the state-court foreclosure judgment and this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

For similar reasons, the Plaintiff's argument is unavailing that the compulsory counterclaims bar does not apply because "Plaintiffs' claims raised in the present action do not arise out of the same transaction as the foreclosure action." Response, at 7 [D.E. 56]. Of course, the Plaintiffs' position that the Defendants wrongfully pursued a foreclosure based upon an invalid Assignment arises out of the same "transaction or occurrence" as the foreclosure itself; namely, the mortgage executed by Plaintiffs upon which that action was predicated. *See, e.g., MBNA America Bank v. Cunningham*, 8 So.3d 438, 441 (Fla. 2d DCA 2009) ("These counts are compulsory, they are inextricably tied to the transaction or occurrence underlying MBNA's claim"). Further, the purported failure to comply with the validation requirements of 15 U.S.C. §

---

[2] *See* Amended Complaint, at ¶¶16-17 ("Plaintiff contends that Defendants have conspired and committed suspicious activities in order to <u>wrongfully foreclose with total disregard for Federal and State laws</u>…Plaintiff contends that Defendants have created and caused suspicious documents to be filed into the public records of MIAMI DADE County and into the State Court giving the appearance that there is a legal foreclosure going on…"); ¶¶27-28; 33; 38-44, 45 [D.E. 11] (emphasis added).

[3] *Drew v. Rivera*, 2012 WL 4088943, at *1 (N.D. Fla. Aug. 6, 2012) (not reported), cited by the Plaintiffs, is distinguishable on this basis. In that case, the plaintiff's claims under FDCPA and FCCPA were not based upon a purportedly fraudulent assignment, but on allegations of "…falsely representing the character of a debt, continuing collection activity after failing to validate a disputed debt, and disclosing information about a debt known to be reasonably disputed." *Id.* In order to award damages for those violations, the court did not need to find that the underlying collections lawsuit was wrongful. *Id.*, at *3. As recognized by the *O'Neal* and *Figueroa* courts, the situation is plainly different where the basis for an award of damages is the fraudulent and/or invalid nature of an Assignment upon which the underlying judgment is (according to the Plaintiffs) necessarily predicated.

1692g after filing the foreclosure action is not pled as conceptually separate from the Choice Legal Defendants' "…continuing collection activities without validating the alleged debt in dispute,"[4] and the FDCPA violation occurs when the collection activities are undertaken without verification.[5] As such, there is no reason that Plaintiffs could not have raised both their FCCPA and FDCPA claims in the foreclosure suit. *See, e.g., Puff 'N Stuff of Winter Park, Inc. v. Federal Trust Bank, F.S.B.*, 945 F.Supp. 1523, 1531 (M.D. Fla. 1996) ("Had PNS and the Dietels prevailed in state court, the loans on which Federal Trust sought foreclosure could have been rendered illegal and unenforceable which leads logically to the conclusion that the RICO claim is a compulsory counterclaim that should have been presented to the state trial court and is, therefore, barred here"); *Petillo v. World Savings Bank, FSB*, 2009 WL 217893, at *4-5 (M.D. Fla. Jul. 21, 2009) (not reported) (TILA claims arising from mortgage were compulsory counterclaims in state court proceedings).

At bottom, all of the claims here center on the actions taken in foreclosure proceedings against the Plaintiffs, which issues should have been raised as counterclaims and/or affirmative defenses in those proceedings.[6] *See, e.g., In re Collado*, 2010 WL 328295, at *2 (S.D. Fla. Aug. 13, 2010) (not reported) ("Litigation of defenses and compulsory counterclaims are part and parcel to the mortgage foreclosure action wherein the amount, validity <u>and entitlement to enforce the debt</u> were adjudicated") (emphasis added). They are not properly countenanced here, and should be dismissed with prejudice.

**II.     Plaintiffs Cannot Avoid the Immateriality of the Assignment They Challenge.**

Plaintiffs ignore in their Response [D.E. 56] the Choice Legal Defendants' argument that the Assignment (Ex. D to Amended Complaint [D.E. 11]) at issue was entirely immaterial to the underlying state court foreclosure action. *See* Motion to Dismiss, at pp. 5-6 [D.E. 45]. Instead, Plaintiffs rely upon opinions from other jurisdictions outside of Florida and the Eleventh Circuit for the general proposition that false representations of ownership of a debt can suffice to state

---

[4]     Amended Complaint, at ¶56 [D.E. 11].

[5]     *Typpi v. PNC Bank, N.A.*, 2014 WL 296035, at *4 (N.D. Ill. Jan. 27, 2014) (not reported).

[6]     Unlike in *Azar v. Hayter*, 874 F.Supp. 1314, 1317 (N.D. Fla. 1995), cited in the Response [D.E. 56], Plaintiffs here cannot argue that their "…FDCPA claim has nothing to do with whether the underlying debt is valid," because their FCCPA and FDCPA claims are predicated upon continuing collection activities without verifiying a debt <u>that they allege to be fraudulent</u>. As for the other authorities cited by Plaintiffs on this point *(see* Response, at 7 [D.E. 56]), the Court need not defer to opinions from outside this jurisdiction, where courts in the Eleventh Circuit have provided more than enough guidance.

FDCPA violations. *Rinehart v. OneWest Bank*, FSB, 2012 WL 1624298, at *6 (D. Ore. May 8, 2012) (not reported); *Turner v. Lerner, Sampson & Rothfuss*, 776 F.Supp.2d 498, 506 (N.D. Ohio 2011).  This argument misses the point, however, which is that the plaintiff in the underlying foreclosure action did not need to rely on any Assignment to prove ownership; its possession of the Promissory Note indorsed in blank was alone sufficient.  *See* Ex. A to Amended Complaint [D.E. 11].  The question of whether or not the Assignment was material is governed directly by Florida law;[7] Plaintiffs' reliance on district court opinions from Ohio and Oregon is therefore wholly unavailing.  Because an immaterial Assignment simply cannot form any basis for the Plaintiffs' suggestion that the underlying action was not a "legal foreclosure" (Amended Complaint, at ¶17 [D.E. 11]), the Plaintiffs' claims based upon the Choice Legal Defendants' reliance on the Assignment must fail.

**III.   Plaintiffs' "Continuing Violation" Theory Does Not Bring Their FDCPA Claim Within the Relevant Limitations Period.**

Plaintiffs seek to avoid the statute of limitations by reliance upon a theory that the Choice Legal Defendants' alleged violation of FDCPA continued beyond the service of the collections lawsuit against them.  *See* Response, at 10 ("Plaintiffs' allegations against Defendants set forth a pattern and course of conduct that continued through May 29, 2013") [D.E. 56]. Notwithstanding their suggestion that the face of the Amended Complaint [D.E. 11] does not reveal all of the necessary factual predicates to apply the statute of limitations to their claims, Plaintiffs cite paragraph 57 of the Amended Complaint for their argument, which alleges that "[p]laintiff is seeking actual damages because on May 29, 2013 a final hearing was heard for the STATE CASE and a final judgment was entered."  D.E. 11, at p. 7.  This theory fails as a matter of law, however, because the Plaintiffs do not allege timely FDCPA violations on the part of the Choice Legal Defendants, and the most recent violation that they allege – undertaking collections activities without validating the disputed debt – occurred when they were served with the complaint on August 16, 2012.  *See* Amended Complaint, at ¶36 [D.E. 11]; *Perez v. Bureaus Investment Group No. II, LLC*, 2009 WL 1973476, at *2 (S.D. Fla. Jul. 8, 2009) (not reported).

Plaintiffs cannot rely on subsequent actions taken in furtherance of the collections lawsuit to bring their stale claims within the one-year statute of limitations.  Such actions are not discrete

---

[7]    *See* Fla. Stat. § 673.2051(2).

from the filing of the lawsuit, and therefore cannot serve to establish a "pattern and course of conduct," by definition. *See, e.g., Farrell v. Patrick A. Carey, P.A.*, 2012 WL 6803654, at *4 (M.D. Fla. Dec. 19, 2012) ("The filing of an Affidavit in a lawsuit that has already been filed is not a discrete act independent of the suit itself"); *Jones v. U.S. Bank, N.A.*, 2011 WL 814901, at *5 (N.D. Ill. Feb. 25, 2011) ("Moreover, continuing to prosecute the Foreclosure Case is not itself a discrete debt collection activity sufficient to toll or restart the statute of limitations"); *Ruth v. Unifund CCR Partners*, 2009 WL 585847, at *11 (N.D. Ohio Mar. 6, 2009) (not reported);[8] *McNerney v. Mortgage Electronic Registration Systems, Inc.*, 2010 WL 3222044, at *7 (N.D. Ohio Aug. 13, 2010) (not reported) (rejecting continuing violation theory as to claim under Ohio Consumer Sales Practices Act).

Plaintiff does not allege or argue any distinct misrepresentation or claim, or any conduct on the part of the Choice Legal Defendants after the filing of the collections lawsuit, beyond actions that were intrinsic and necessary to the maintenance of that already-filed claim.[9] *See* D.E. 11, at ¶56 ("On March 27, 2013 Attorney DUENAS from C. LEGAL filed a document titled "Plaintiff's witness and exhibit list" for the STATE CASE, continuing collection activities without validating alleged debt in dispute"); ¶57. The authorities cited by the Plaintiffs are therefore distinguishable, because each involved discrete violations taking place during the limitations period.[10] Here, on the other hand, "[t]his is not a case where defendants have sent a

---

[8] "But rather than alleging a repeated pattern of conduct by Defendants, Plaintiff contends that Unifund's filing of suit without legal capacity, and then mere maintenance of that suit (and performance of common litigation tasks in connection therewith), without remedying its lack of legal capacity, constitutes a continuing violation – such that the filing of the suit was one violation, and the maintenance of the suit, independent of any other specific action by defendants, was another. Similar contentions have been rejected repeatedly by other courts, and this Court finds Plaintiff's argument equally spurious."

[9] *See, e.g., Martin v. Sessom & Rogers, P.A.*, 2010 WL 3200015, at *3 (E.D. N.C. Aug. 12, 2010) (not reported) ("Furthermore, 'new communications concerning an old claim do not start a new period of limitations'") (citation omitted).

[10] *See Devlin v. Law Offices of Howard Lee Schiff, P.C.*, 2012 WL 4469139, at *3 (D. Mass. Sep. 2, 2012) (not reported) ("Meanwhile, several months after filing suit … Schiff sent Devlin another collection letter…"); *Joseph v. J.J. MacIntyre Companies, L.L.C.*, 281 F.Supp.2d 1156, 1161-62 (N.D. Cal. 2003) ("Here, however, Plaintiff alleges that Defendant persisted in a pattern of repeated calls including automated phone calls … approximately 75 of these calls were within the limitations period"); *Padilla v. Payco General American Credits, Inc.*, 161 F.Supp. 2d 264, 273 (S.D. N.Y. 2001) (relying on fraudulent statements within limitations period); *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 799 (S.D. Ohio 2006) (relying on post-judgment collections efforts within limitations period). *Kaplan v. Assetcare, Inc.*, a case from this Court, is not cited by the Plaintiffs but is distinguishable upon the same basis. *See* 88 F.Supp.2d 1355, 1360 (S.D. Fla. 2000) ("Plaintiff's initial complaint was filed on February 16, 1999, more than one year after the mailing of Assetcare's first letter, but less than one year after the other four letters").

series of threatening letters, each of which violate the FDCPA and only some of which are time-barred."[11] *Sierra v. Foster & Garbus*, 48 F.Supp.2d 393, 395 (S.D. N.Y. 1999). The foregoing actions simply do not constitute any continuing or separate violation, and are included because Plaintiffs themselves recognize that the only actionable conduct occurred outside the limitations period. *See Schaffhauser v. Burton Neil & Associates, P.C.*, 2008 WL 857523, at *3 (M.D. Pa. Mar. 27, 2008) (not reported) ("They were communications that ordinarily occur in the course of litigation and are not independently actionable under the FDCPA"); *Zigdon v. LVNV Funding, LLC*, 2010 WL 1838637, at *6, n.3 (Apr. 23, 2010) (not reported) (rejecting argument that each filing made during the state court action was a separate misrepresentation).

Under such circumstances – where Plaintiffs rely on a meritless legal theory arising from facts clearly alleged in the Amended Complaint [D.E. 11] (alongside their exhaustive multitude of other time-barred allegations) – Plaintiffs cannot be heard to deny that the applicability of the statute of limitations is apparent on the face of their pleadings. *See, e.g., Farrell*, 2012 WL 6803654, at *4 ("Applied here, the Second Amended Complaint contains no [allegation of conduct independent of the act of filing suit], nor can the asserted facts support such an allegation"). As in *Farrell*, this Court should dismiss Plaintiffs' FDCPA claim, with prejudice.

**IV.  The Litigation Privilege Bars Plaintiffs' FCCPA Claim, and Its Applicability is Clear On the Face of the Amended Complaint.**

Plaintiffs' Response [D.E. 56] mischaracterizes the Choice Legal Defendants' Motion to Dismiss [D.E. 45] in stating "Defendants argue in their Motion to Dismiss that Florida's litigation privilege bars Plaintiffs' claims," apparently including the FDCPA claim. *See* Response, at 9 [D.E. 56]. To the contrary, the Motion to Dismiss clearly acknowledged that the litigation privilege only applied to Plaintiffs' state law claims, as stated in the caption for Section IV dealing with the state law claims. *See* D.E. 45, at 9.

Conspicuously absent from Plaintiffs' arguments is any suggestion that the conduct on the part of the Choice Legal Defendants alleged to violate FCCPA does not fall within the litigation privilege. Here, unlike in the case opaquely cited by Plaintiffs (*see* Response, at p. 9 [D.E. 56]), the only communication sent by any of the Choice Legal Defendants came <u>after</u> the

---

[11] The "continuing violation" doctrine has no application outside of such contexts, even in the courts that have accepted it. *Camacho v. National Credit Adjustment Agency*, 2007 WL 760416, at *2 (E.D. Wash. Mar. 8, 2007) (not reported ) ("Not all courts agree that the continuing violation doctrine is applicable under  §1692k(d) … In this instance, it is unnecessary to choose between the conflicting rules because, even if the continuing violation doctrine is applicable, it is applicable only in cases in which the defendant engaged in a large number of similar acts").

underlying collections lawsuit had been instituted against the Plaintiffs.[12] *See, e.g., Acosta v. Gustino*, 20123 WL 6069862, at *5 (M.D. Fla. Nov. 18, 2013) ("The letter makes clear that the State Action had already been filed and was ongoing at the time the letter was sent"); *compare to North Star Capital Acquisitions, LLC v. Krig*, 611 F.Supp.2d 1324, 1330 (M.D. Fla. 2009) (involving allegedly misleading or deceptive documents served with complaint). More importantly, the Plaintiffs' FCCPA claim does not even appear to be based upon the dunning letter allegedly sent on August 9, 2012; rather, Plaintiffs complain that the "Defendants continue to collect the alleged deb [*sic*] in dispute without proper verification," and of Defendants' maintaining a foreclosure action upon an allegedly fraudulent assignment. *See* D.E. 11, at ¶¶33, 55, 75-76. And of course, the initiation and maintenance of the collections lawsuit itself is protected by the absolute litigation privilege. *Mikesell v. FIA Card Svcs., N.A.*, 2013 WL 5781241, at *2 (M.D. Fla. Oct. 25, 2013) ("Because the filing of a lawsuit clearly relates to a judicial proceeding, it cannot serve as the basis for plaintiff's claims").

Here, unlike in *Owens v. Ronald R. Wolf & Associates, P.L.*, 2013 WL 6085121, at *5 (S.D. Fla. Nov. 19, 2013), the applicability of the litigation privilege to Plaintiffs' claims that the Choice Legal Defendants prosecuted a wrongful foreclosure action "affirmatively and clearly" appears on the face of the Amended Complaint. *See* D.E. 11, at ¶¶32-35, 55-56, 75-76. As such, the Court can and should address the litigation privilege on the Choice Legal Defendants' Motion to Dismiss [D.E. 45]. *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1277 (11th Cir. 2004) (applying Florida law); *LatAm Investments, LLC v. Holland & Knight, LLP*, 88 So.3d 240, 245 (Fla. 3d DCA 2011) ("While the litigation privilege is an affirmative defense … it can be adjudicated on a motion to dismiss if the applicability of the privilege can be clearly discerned from the face of the complaint"). The Plaintiffs effectively concede the applicability of the litigation privilege by failing to dispute it; moreover, a review of the foregoing paragraphs leaves no doubt that the entirety of Plaintiffs' state law claims are concerned with conduct that occurred during and was inextricably related to judicial proceedings. The Court should therefore dismiss the state law claims, including Plaintiffs' FCCPA claim (Count IV), with prejudice.

---

[12] *See* D.E. 11, at ¶¶32; 34-35.

**V.     No Private Right of Action Is Stated Under *Any* Section of the FCCPA.**

Plaintiffs make little effort to defend the merits of their FCCPA claim, arguing only that they have stated a claim under Fla. Stat. § 559.72(9) because "…Defendants attempted to collect a debt knowing that it was not legitimate or properly verified." Response, at 10 [D.E. 56]. The cited paragraphs of the Amended Complaint [D.E. 11], however, provide no support for Plaintiffs' conclusory allegation, merely tracking the language of the statute, that "Defendants violated §559.72(9) by claiming, attempting or threatening to enforce a debt knowing that the debt was not legitimate." D.E. 11, at ¶76.

Knowledge of the alleged failure to verify the debt under FDCPA is simply not the same as knowledge that the debt was not, in fact, legitimate, which Section 552.72(9) unequivocally requires. *See, e.g., Pollock v. Bay Area Credit Service, LLC*, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009) (not reported) (where plaintiff attempted to predicate FCCPA claim on violation of FDCPA requirement to identify oneself as a debt collector, "[t]he Court agree[d] that Plaintiff has conflated the FDCPA's requirements with the FCCPA's provisions, without demonstrating the basis for its legal theory"); *see also Bentley v. Bank of America, N.A.*, 773 F.Supp.2d 1367, 1373 (S.D. Fla. 2011); *In re Cooper*, 253 B.R. 286, 290 (N.D. Fla. 2000). Plaintiffs do not, because they cannot, allege any facts to support their bald conclusion that the Choice Legal Defendants had knowledge that the underlying debt was illegitimate – nor indeed, that the debt was even illegitimate. Because the Plaintiffs are unable to <u>properly</u> allege a "knowing" violation of FCCPA – and because the FCCPA claims are barred by litigation immunity in any event (*see supra*) – the Court should dismiss Count IV with prejudice. *See Reese v. JPMorgan Chase & Co.*, 686 F.Supp.2d 1291, 1312 (S.D. Fla. 2009) (dismissing FCCPA claim with prejudice, upon holding that "…even if the Amended Complaint were not self-contradictory, simply alleging that CitiMortgage knew that the debt it was attempting to collect was invalid is not enough. Plaintiff must plead facts that show how Citimortgage had knowledge"); *Deutsche Bank Nat'l. Trust Co. v. Foxx*, 2013 WL 5291128, at *5 (M.D. Fla. Sep. 19, 2013) (not reported).

**VI.    Plaintiffs Ignore Settled Law in Arguing that Their Allegations Constitute "Trade or Commerce" Under FDUTPA.**

In their Response [D.E. 56], Plaintiffs argue (without citation to any authority) that "[t]heir allegations stating that the Defendants filed false documents with the state court and failed to properly verify the allegations in their client's complaint can be construed to constitute

a deceptive and unfair trade practice under FDUTPA." Response, at 11 [D.E. 56]. Notwithstanding FDUTPA's broad definition of "trade or commerce," courts in the Eleventh Circuit and Florida have clearly held that debt collection – such as the Choice Legal Defendants' activities alleged here – does not fall within it. *Williams v. Nationwide Credit, Inc.*, 890 F.Supp.2d 1319, 1322 (S.D. Fla. 2012); *Acosta v. Gustino*, 2012 WL 4052245, at *1 (M.D. Fla. Sep. 13, 2012) ("Therefore, the Defendants were not engaged in 'trade or commerce' when they sent demand letters and otherwise engaged in their debt collection efforts, and the Plaintiff has failed to state a claim for violation of FDUTPA"); *Trent v. Mortgage Electronic Registration Systems, Inc.*, 618 F.Supp.2d 1356, 1365, n.12 (M.D. Fla. 2007).

The Plaintiffs make no effort to distinguish, or even address, *Williams* or *Trent* (cited in the Motion to Dismiss [D.E. 45]), and instead discuss an opinion that is obviously inapposite. *See* Response, at 11-12 [D.E. 56]. Indeed, in *Saxon Financial Group, Inc. v. Rath*, cited by the Plaintiffs, the basis for the court's holding that the plaintiff had stated a claim under FDUTPA was that the allegations involved a law firm's <u>commercial conduct</u> with respect to its client. *See* 2012 WL 3278662, at *6 (S.D. Fla. Aug. 9, 2012) (not reported) ("Instead, to the extent Rath has alleged violations pertaining to a pattern of intentional overcharging, which includes churning and padding … the claim can proceed"). The general proposition that attorneys are not exempted from FDUTPA when they <u>do</u> engage in "trade or commerce," however, does not mean that the conduct alleged here can be so characterized. *See Baker v. Baptist Hospital, Inc.*, 115 So.3d 1123, 1124-25 (Fla. 1st DCA 2013) ("We agree with the Fourth District Court of Appeal that the pursuit of legal remedies does not fall within the definition of 'trade or commerce'") (*citing State, Office of Attorney General v. Shapiro & Fishman, LLP*, 59 So.3d 353 (Fla. 4th DCA 2011)). Plaintiffs do not argue that the Choice Legal Defendants' alleged conduct constituted the collection of debt for purposes of FDCPA and FCCPA, but not for FDUTPA – nor could they. Count V should be dismissed with prejudice as to the Choice Legal Defendants.

**WHEREFORE**, for all the foregoing reasons, as well as those set forth in the Motion to Dismiss Plaintiffs' Amended Complaint [D.E. 45], the Defendants, CHOICE LEGAL GROUP, P.A., FAITH DOMINIQUE EVERETT, ESQ. and JANE DOE, ESQ., hereby respectfully request that the Court grant the instant motion, dismiss the Plaintiffs' Amended Complaint [D.E. 11], <u>with prejudice</u>, and order such other relief as is deemed equitable and just.

CASE NO. 13-24307-CIV-COOKE /TORRES

DATED:  April 7, 2014.

Respectfully submitted,

  /s/ Robert A. Bouvatte, Jr.
Dale L. Friedman, Esquire
Florida Bar No.:  854646
dfriedman@conroysimberg.com
Robert A. Bouvatte, Jr., Esq.
Florida Bar No.: 0071525
rbouvatte@conroysimberg.com
Conroy, Simberg, Ganon, Krevans, Abel, Lurvey, Morrow & Schefer, P.A.
3440 Hollywood Boulevard, Second Floor
Hollywood, FL 33021
Tel.: 954-961-1400 Broward
Fax.: 954-967-8577
*Attorneys for Choice Legal Group, P.A., Faith Everett, and Jane Doe, Esq.*

CASE NO. 13-24307-CIV-COOKE /TORRES

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2014, the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that a true and correct copy of the foregoing was served this day on all counsel or parties of record on the Service List below, in the manner specified.

   s/ Robert A. Bouvate, Jr.
Dale L. Friedman, Esquire
Robert A. Bouvatte, Jr., Esquire

CASE NO. 13-24307-CIV-COOKE /TORRES

## SERVICE LIST

*CAVERO, LEONARDO AND CAVERO v. ONE WEST BANK FSB, ET AL.*
Case No. 13-24307-CIV-COOKE /TURNOFF
United States District Court, Southern District of Florida

Jennie G. Farshchian, Esq.
Jurado & Farshchian, P.L.
12955 Biscayne Blvd., Suite 328
North Miami, Florida 33181
Tel.: (305) 921-0440
Fax.: (305) 921-0438
Email: Jennie@jflawfirm.com
*Attorney for Plaintiffs*
**Via CM/ECF electronic filing**


Hope T. Cannon, Esq.
Richard K. Vann, Esq.
Bradley Arant Boult Cummings, LLP
1819 Fifth Avenue North
Birmingham, AL 3203-2104
Tel.: (205) 521-8000
Fax.: (205) 521-8800
Email: hcannon@babc.com
          rvann@babc.com
*Attorneys for Defendants One West Bank
and IndyMac Mortgage Services*
**Via CM/ECF electronic filing**